**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

| | |
|---|---|
| JAMES DANIEL TUTEN on behalf of himself and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> UNITED AIRLINES, INC., <br><br> Defendants. | **CLASS ACTION COMPLAINT** <br><br> **JURY TRIAL DEMANDED** <br><br><br> Civil Action No. _____ |

**INTRODUCTORY STATEMENT**

1. This is a class action under the Uniformed Services Employment and Reemployment Rights Act ("USERRA"), 38 U.S.C. § 4301 *et seq.*, on behalf of current and former pilots of United Airlines, Inc. ("United") for whom United failed to make the full pension contributions required by federal law for periods in which pilots took military leave to honorably serve in the United States Armed Forces between 2000 and 2010.

2. Between 2000 and 2010, United maintained and implemented a uniform policy of calculating and making pension contributions of pilots who took military leave under USERRA by which United made pension contributions to pilots based on the monthly minimum flight hours guaranteed under the pilots' collective bargaining agreement ("CBA"), instead of based on the average rate of compensation or flight hours during the 12-month period that immediately preceded the period of military leave ("United's Policy").

3.   United's Policy violated USERRA's pension provision that requires employers to make pension contributions "on the basis of the employee's average rate of compensation during the 12-month period immediately preceding" military leave, when an employee's average wage rate "is not reasonably certain." 38 U.S.C. § 4318(b)(3).  By maintaining and implementing this policy from April 2000 through November 2010, United violated the USERRA rights of those current and former pilots who were participants in the United Airlines Pilots' Directed Account Retirement Income Plan (the "PDAP" or the "Plan").  As a result of such violations, United failed to contribute the correct amount of contributions to the accounts of pilots who took military leave from 2000 to November 2010.

4.   As a result, Plaintiff seeks a declaration that United has violated USERRA, 38 U.S.C. § 4318, with respect to the policy and formula by which United made contributions to PDAP accounts of himself and the Class, and an order requiring United to compensate them and all members of the Class so that all current and former United pilots affected by this policy receive the full pension contributions mandated by USERRA, as well any compensation or other equitable relief that will make them whole for United's failure to properly contribute to their PDAP accounts.

**JURISDICTION AND VENUE**

5.   Subject matter jurisdiction is conferred on this Court by 38 U.S.C. § 4323(b)(3), which provides that the district courts of the United States have jurisdiction over a USERRA action brought against a private employer.  This Court also has subject matter jurisdiction over this action under 28 U.S.C. § 1331, because this action arises under laws of the United States,

and under 28 U.S.C. § 1343(a)(4), because Plaintiff seeks to secure relief under an Act of Congress that protects civil rights.

6. Venue is proper in this district under 38 U.S.C. § 4323(c)(2) and 28 U.S.C. § 1391(b)(2). Defendant United Airlines, Inc. is a private employer that maintains places of business in the district of this United States District Court, and a substantial part of the events giving rise to the claims in this action occurred in this district. Defendant United maintains one of its primary transportation hubs at the Denver International Airport and is one of Denver's largest private sector employers with nearly 5,000 employees who live in Denver.

## PARTIES

7. Plaintiff Lt. Colonel James Daniel Tuten is a United pilot who took military leave in 2006, 2009 and 2010. Plaintiff Tuten resides in Highlands Ranch, Colorado and has been an employee of United in Denver, CO since 1996. During the periods in which Plaintiff Tuten took military leave, Plaintiff Tuten was a participant in PDAP.

8. United Airlines, Inc., an Illinois corporation, is one of the largest airlines in the world, is an employer within the meaning of 38 U.S.C. § 4303(4)(A), and employs around 7,500 pilots based in the United States. United operates airline services from Denver International Airport, which is located in this District. United is and between April 2000 and November 2010 was the plan sponsor of the PDAP.

## CLASS ACTION ALLEGATIONS

9. Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the following persons:

>(1) all former or current pilots of United Airlines, Inc. nationwide who were participants in the United Airlines Pilot' Directed Account Retirement Income Plan between April 1, 2000 and November 30, 2010;
>
>(2) who took military leave between April 1, 2000 and November 30, 2010;
>
>(3) received pension contributions from United Airlines, Inc. based on the monthly minimum flight hours guaranteed under the pilots' CBA; and
>
>(4) whose average rate of compensation or flight hours during a 12-month period that immediately preceded a period of military leave (or, if shorter, the period of employment immediately preceding such period of military leave) exceeded the monthly minimum flight hours guaranteed under the pilots' CBA.

Excluded from the proposed class are all former or current pilots who previously reached settlements with or judgments against United in their individual USERRA actions concerning inadequate pension contributions for periods of military leave.

10.  This action is properly maintainable as a class action because the requirements of Rule 23(a) and Rule 23(b) of the Federal Rules of Civil Procedure are met.

**Impracticability of Joinder**

11.  The class is so numerous that joinder of all members is impracticable. Upon information and belief, hundreds of former and current United pilots are members of the proposed class. United has domestic "hubs" in Newark, New Jersey, Houston, Texas, San Francisco, California, and Denver, Colorado. Upon information and belief, the members of the Class are geographically dispersed.

**Commonality**

12. United had a uniform policy for calculating and making pension contributions to pilots who took military leave from April 1, 2000 through November 30, 2010. This United Policy was applied uniformly to each member of the Class.

13. The central question in this litigation is whether United's Policy by which United made contributions to the PDAP accounts of pilots who took military leave violated USERRA. Because there was a uniform policy and formula applied by United in making those contributions between April 1, 2000 and November 30, 2010, the answer to that central question will also produce a common answer.

14. Plaintiff's claim raises questions of law or fact common to the Class that are central to the validity of the claim of each class member. These subsidiary common questions that also will have common answers include, but are not limited to, the following:

   (a) whether the rate of pay that United's pilots would have received but for their military service was "not reasonably certain" when United's pilots took military leave from 2000 to November 2010;

   (b) whether United had a policy of calculating and making pension contributions on behalf of its pilots who took military leave from 2000 to November 2010 based on the monthly minimum flight hours that were guaranteed under the pilots' CBA;

   (c) whether United failed to calculate and make pension contributions on behalf of its pilots who took military leave from 2000 to November 2010 based on the average rate of compensation or flight hours during a 12-month period that immediately preceded a period of military leave (or, if shorter, the period of employment immediately preceding such period of military leave);

   (d) whether United's policy of calculating and making pension contributions to pilots who took military leave from 2000 to November 2010 based on the monthly minimum flight hours that were guaranteed under the pilots' CBA violated USERRA, 38 U.S.C. § 4318, because the rate of pay United's pilots would have received but for their military service was "not reasonably certain" when leave was taken from 2000 to November 2010; and

  (e) whether United willfully violated USERRA, 38 U.S.C. § 4318, such that United should be required to pay liquidated damages to former and current United pilots who were denied pension benefits due to United's violations of USERRA.  38 U.S.C. § 4323(d)(1)(C).

15. As United had a uniform policy applying a formula to the amount of contributions, Plaintiff and all other members of the Class members suffered the same type of injury based on the same type of policy, and resolving the claims of all members of the Class will be based on common legal and factual questions.

**Typicality**

16. Plaintiff's claims are typical of the other members of the Class.  Plaintiff Tuten and each member of the Class was subject to United's Policy.  United employed that policy to calculate and make contributions to the PDAP accounts of pilots who took military leave anytime between April 1, 2000 and November 30, 2010.

17. Additionally, the relief sought consists primarily of a declaration establishing their rights under USERRA with respect to the amount of contributions made under the plan and an order requiring United to calculate and make contributions under a formula different than the one employed by United between April 2000 and November 2010.

**Adequacy**

18. Plaintiff will fairly and adequately protect the interests of other members of the Class.

19. Defendant has no unique defenses against the Plaintiff that would interfere with Plaintiff's representation of the Class.

20.     Plaintiff has engaged counsel who are experienced in federal court class-action litigation, including civil rights litigation and pension litigation, and who have considerable expertise in the area of USERRA.

**Rule 23(b)(1)**

21.     This action is also properly maintainable as a class action under Rule 23(b)(1) of the Federal Rules of Civil Procedure because the central question is whether the uniform policy by which United made contributions to the PDAP on behalf of United's pilots violates USERRA.

22.     Administration of a pension plan requires that all similar situated participants be treated consistently.  As a practical matter, resolution of whether United properly contributed the appropriate amounts to any participant's account using a uniform formula would be dispositive of that matter for other members of the Class.  Likewise, conflicting interpretations as to the amount that should have been contributed to similarly situated participants would create the risk of establishing inconsistent standards of conduct for the Plan, its administrator, its fuduciary and its sponsor.

**Rule 23(b)(2)**

23.     This action is also properly maintainable as a class action under Rule 23(b)(2) of the Federal Rules of Civil Procedure.

24.     Defendant United maintained a uniform policy and consistently utilized a formula that applied to all members of the Class.  As such, Defendant United has acted or refused to act on grounds that apply generally to the Class.  As a result, final declaratory relief is appropriate respecting the class as a whole.

25. The monetary relief that Plaintiff seeks either flows from and/or is incidental to the declaratory relief sought, as it flows directly from the ordering of such declaratory relief and can be calculated in a simple, objective, and mechanical manner.

**Rule 23(b)(3)**

26. This action is also properly maintainable as a class action under Rule 23(b)(3) of the Federal Rules of Civil Procedure.

27. The questions of law and fact common to members of the class predominate over questions affecting only individual members and a class action is superior to other available methods for the fair and efficient resolution of this controversy. By resolving the common issues described above in a single class proceeding, each member of the proposed class will receive a determination of whether United violated his or her rights under USERRA and the remedy that should be provided under USERRA.

28. Upon information and belief, other than *LaTourrette v. United Air Lines, Inc.*, 1:12-cv-00635-WJM-CBS (D. Colo.), there is no other pending lawsuit in which members of the Class raised these allegations prior to the time that this Complaint was filed.

29. This is an appropriate forum for these claims because, among other reasons, jurisdiction and venue is proper, the only other known related litigation was filed in this forum, and one of United's four domestic hubs is located in this District.

30. There are no difficulties in managing this case as a class action.

## FACTUAL ALLEGATIONS

**The Plan**

31. United is, and between at least 2000 and 2010 was, the plan sponsor of the Pilots' Directed Account Retirement Income Plan (the "PDAP" or the "Plan").

32. The PDAP is and has been maintained pursuant to the terms of a collective bargaining agreement between the United and the Air Line Pilots Association, International ("ALPA").

33. Between at least 2000 and 2010 the PDAP was a profit sharing plan intended to be a qualified cash or deferred arrangement under Internal Revenue Code Section 401(k), and intended to conform to the requirements of the Employee Retirement Income Security Act ("ERISA"). Between at least 2000 and 2010, the PDAP met the definition of a pension plan under ERISA § 3(2) and a defined contribution plan under ERISA § 3(34).

34. Pursuant to the terms of the Plan, pilots who were employees of United – other than Leased Employees – were eligible to be participants in the PDAP between 2000 and 2010.

35. Pursuant to the terms of the Plan between 2000 and 2010, United was required to make monthly contributions on behalf of participants in the PDAP to the Participant's Regular Contribution Account based on the amount of Earnings of the Pilot.

**United's Policy of Contributions to the Plan**

36. Since 2000, United has made contributions to PDAP on behalf of the participants who were pilots covered by the CBA with ALPA.

37. Since 2000, United has maintained a "B Fund" for each pilot participant in PDAP, and since 2005 United has maintained a "C Fund" for each pilot participant in PDAP. For both

funds, United, as the plan sponsor, was required to and upon information and belief did make contributions to the B Fund and/or the C Fund for pilot participants based on certain fixed percentages of each pilot's earnings per month as set forth in the governing plan document.

38. In any given month or year, United's contributions into the B Fund and/or C Fund on behalf of each pilot participant varied significantly from month-to-month and year-to-year because pilots' earnings are largely based on the number of hours worked each month and pilots' hours do or can vary considerably each month. Pilots' hours are variable and unpredictable each month because pilots bid for flights under United's flight bidding process.

39. Upon information and belief, United was required under the terms of the Plan to make contributions to the B Fund for each pilot in the amount of 11 percent of his or her earnings from April 2000 through June 2003, and in the amount of 9 percent of his or her earnings from June 2003 through 2010; and from June 2005 through February 2008, United was required to make defined contributions to the C Fund for each pilot in the amount of 6 percent of his or her earnings, and in the amount of 7 percent of his or her earnings from February 2008 through 2010.

40. From 2000 to November 2010, when United's pilots took military leave for more than 30 days, United maintained and implemented a policy of calculating and making pension contributions to the B Fund and/or C Fund based on the minimum amount of monthly flight hours guaranteed under the pilots' CBA.

41. From sometime in 2000 to May 2003, United's pilots were guaranteed at least 75 flight hours each month under the terms of the CBA with ALPA. From May 2003 to November

2010, United's pilots were guaranteed at least 70 flight hours per month under the terms of the CBA with ALPA.

42. Between 2000 and May 2003, a large percentage of United's pilots on average worked more than 75 flight hours per month. Between May 2003 and November 2010, a large percentage of United's pilots on average worked more than 70 flight hours per month.

43. Between 2000 and November 2010, United did not make pension contributions to the B Fund and/or the C Fund in the PDAP based on the average hours worked in the 12 months (or smaller applicable periods) preceding the pilots' deployments or other periods of military leave in excess of 30 days.

**Plaintiff's USERRA Protected Military Leave**

44. Plaintiff Tuten took leave that qualified as a service in the uniformed services under USERRA, 38 U.S.C. § 4303(13), in 2006, 2009, and 2010. During those periods, Plaintiff Tuten was a participant in the PDAP. During those periods, United was required under the terms of the Plan to make contributions to his Regular Contribution Account. During some or all of those periods, United made contributions to the B Fund and/or C Fund based on the monthly minimum flight hours that were guaranteed under the CBA with ALPA. During some or all of those periods, United did not make contributions based on the average rate of compensation or flight hours during the 12-month period that immediately preceded his military leave. As a result, Plaintiff Tuten received substantially lower contributions from United to his PDAP account than he would have received had his pension contributions been calculated based on his average rate of compensation or flight hours during the 12-month period that immediately preceded his military leave. As a result of failing to receive the proper amount of contributions

to his PDAP account, Plaintiff Tuten lost the opportunity to receive earnings on those contributions.

45. Each member of the Class took military leave that qualified as "service in the uniformed services" under USERRA, 38 U.S.C. § 4303(13), between 2000 and November 2010. During those periods, United was required under the terms of the Plan to make contributions to each class member's PDAP Account. During those periods, United made contributions to the B Fund and/or C Fund based on the monthly minimum flight hours that were guaranteed under the CBA with ALPA. During each of those periods, United did not make contributions based on the average rate of compensation or flight hours during the 12-month period that immediately preceded each class member's military leave. As a result, each member of the Class received substantially lower contributions from United to his or her PDAP account than he or she would have received had his or her pension contributions been calculated based on his or her average rate of compensation or flight hours during the 12-month period that immediately preceded his or her military leave. As a result of failing to receive the proper amount of contributions to his or her PDAP account, each class member also lost the opportunity to receive earnings on those contributions.

**United Prospectively Changes Its PDAP Contribution Policy for Pilots on Miltary Leave**

46. According to the Consent Decree in *LaTourrette v. United Air Lines, Inc.*, 1:12-cv-00635-WJM-CBS (D. Colo.), United "changed its PDAP contribution policy for pilots on military leave to comply with USERRA in November 2010," so that pilots who are participants in the PDAP would prospectively receive pension contributions based on the pilot's average rate of compensation during the 12-month period immediately preceding military leave.

**United's Settlements With Individual Pilots**

47.     Upon information and belief, United has settled a number of claims by individual pilot participants in PDAP for whom United failed to make contributions required by USERRA for the period covering their military service.  Upon information and belief, some of those settlements required the settlement terms to be kept confidential.

48.     On June 8, 2012, United settled an individual USERRA action that the U.S. Department of Justice had filed against United, entitled *LaTourrette v. United Air Lines, Inc.*, 1:12-cv-00635-WJM-CBS (D. Colo.), brought on behalf of TenEyck LaTourrette, a United pilot who was denied pension contributions during several periods of military leave.  Despite United's decision to settle several individual claims of pilots who were denied the full pension benefits mandated by USERRA and its change of policy prospectively in November 2010, United has not taken action to retrospectively compensate hundreds of pilots who did not receive the proper amount of contributions to their PDAP accounts between 2000 and November 2010 as required by USERRA, 38 U.S.C. § 4318.

## CLAIM FOR RELIEF

### (VIOLATION OF USERRA 38 U.S.C. § 4318)

49.     Plaintiff hereby repeats and incorporates the allegations contained in the foregoing paragraphs as if fully set forth herein.

50.     USERRA, 38 U.S.C. § 4318(a)(2)(B), (b)(1), provides that a servicemember's pension benefits will continue to accrue while he or she is engaged in uniformed services.

51.     For the purpose of determining the pension contribution an employer owes an employee who is engaged in uniformed services, when an employee's rate of compensation is

"not reasonably certain," USERRA mandates that the employer must make pension contributions "on the basis of the employee's average rate of compensation during the 12-month period immediately preceding such period (or, if shorter, the period of employment immediately preceding such period)." 38 U.S.C. § 4318(b)(3).

52. Since at least 2000, United's pilots, including Plaintiff and the class members, have earned compensation that varied significantly based on a number of factors, including the number of flight hours each month. As a result, each United pilot's monthly compensation was "not reasonably certain" during any month or year since 2000. 38 U.S.C. § 4318(b)(3).

53. Between 2000 and November 2010, United made contributions to the PDAP for pilots who took military leave based on the monthly minimum flight hours guaranteed under the pilots' collective bargaining agreement, instead of based on the average rate of compensation or flight hours during the 12-month period that immediately preceded the period of deployment (or, if shorter, the period of employment immediately preceding such period).

54. By failing to make pension contributions to pilots who took military leave based on the average rate of compensation or flight hours during the 12-month period that immediately preceded the period of deployment (or, if shorter, the period of employment immediately preceding such period)," between 2000 and November 2010, United violated USERRA, 38 U.S.C. § 4318(b)(3).

55. United's policy of making pension contributions to pilots on military leave based on the minimum amount of monthly flight hours guaranteed under the pilots' CBA violates USERRA, because USERRA requires an employer to make pension contributions "on the basis of the employee's average rate of compensation during the 12-month period immediately

preceding" military leave, when an employee's average wage rate "is not reasonably certain." 38 U.S.C. § 4318(b)(3).

56. Upon information and belief, since 2000 United knew that its policy for making pension contributions to pilots who took military leave violated USERRA, 38 U.S.C. § 4318, but failed to bring its pension policies into compliance with federal law until November 2010.

57. Due to United's failure to comply with USERRA, Plaintiff and other members of the class received substantially lower pension contributions from United to their PDAP accounts than they otherwise would have received had their pension contributions been lawfully calculated under 38 U.S.C. § 4318(b)(3) based on their average rates of compensation or flight hours during the 12-month period that immediately preceded their military leave.

58. Additionally, as a result of United's failure to comply with USERRA, Plaintiff and other members of the class have also lost the opportunity for earnings on the additional contributions that United should have made if United had complied with USERRA.

## **REQUEST FOR RELIEF**

WHEREFORE, Plaintiff prays that judgment be entered against Defendant on all claims and respectfully requests that this Court award the following relief:

    A.    Declare that Defendant United's policy with respect to the formula by which United made contributions to the PDAP between April 1, 2000 and November 30, 2010 violated the rights of Plaintiff and the Class under the Uniformed Services Employment and Reemployment Rights Act of 1994, as amended, 38 U.S.C. § 4301 *et seq*.;

    B.    Declare that Plaintiff and the Class are entitled to receive contributions to their PDAP accounts in an amount that is based on their average rate of compensation and/or

flight hours during the 12-month period that immediately preceded a period of military leave (or, if shorter, the period of employment immediately preceding such period of military leave) if such average rate exceeded the monthly minimum flight hours guaranteed by the CBA;

C.     Require Defendant United to recalculate the contributions made to PDAP accounts of Plaintiff and the Class in accordance with the Court's declaration;

D.     Require Defendant United to fully compensate Plaintiff and the Class for the loss of benefits suffered by reason of their failure to comply with the provisions of USERRA by awarding an amount that fully compensates Plaintiff and the Class for United's failure to make these contributions when originally due, such as lost earnings on the unmade contributions and/or awarding Plaintiff and the Class prejudgment interest on the amount of contributions that were required to be made under USERRA but which United failed to make (whichever amount is greater);

E.     Order Defendant United to pay all members of the Class liquidated damages in an amount to be determined at trial, 38 U.S.C. § 4323(d)(1)(C);

F.     Require Defendant United to pay attorneys' fees and costs pursuant to 38 U.S.C. § 4323(h) and/or ordering the payment of reasonable fees and expenses in this action to Plaintiff's Counsel on the basis of the common benefit and/or common fund doctrine out of any money or benefit recovered for the Class in this Action; and

G.     Grant such other and further relief as the Court deems proper, just and/or equitable.

## JURY TRIAL DEMAND

Plaintiff hereby demands a trial by jury.

Dated: June 15, 2012

Respectfully submitted,

_____
R. Joseph Barton
Peter Romer-Friedman
COHEN, MILSTEIN, SELLERS &
 TOLL, PLLC
1100 New York Avenue, NW, Suite 500
Washington, D.C. 20005
(202) 408-4600 (p)
(202) 408-4699 (f)
jbarton@cohenmilstein.com


Matthew Z. Crotty
Witherspoon Kelley
422 W. Riverside Avenue, Suite 1100
Spokane, WA 99201
(509) 624-5265 (p)
(509) 458-2728 (f)
mzc@witherspoonkelley.com

*Attorneys for the Plaintiff*