## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:12-cv-01561-WJM-MEH

JAMES DANIEL TUTEN on behalf of himself and
all others similarly situated,

Plaintiffs,

v.

UNITED AIR LINES, INC.,

Defendant.

## PLAINTIFF'S UNOPPOSED MOTION FOR CLASS CERTIFICATION, PRELIMINARY APPROVAL OF SETTLEMENT AGREEMENT, AND APPROVAL OF NOTICE TO THE CLASS, AND MEMORANDUM IN SUPPORT

# TABLE OF CONTENTS

**Page**

I.    FACTUAL AND PROCEDURAL BACKGROUND........................................ 1
    A.    The Complaint ................................................................. 1
    B.    The Parties Agree to Explore Settlement and Stay the Action .............. 3
    C.    The Parties Engage in Substantial Informal Discovery ........................ 4
    D.    The Parties Negotiate a Methodology to Estimate Potential Damages ................ 4
    E.    Plaintiff's Expert Calculates the Potential Damages of Class Members ............... 6
    F.    The Parties Negotiate an Agreement in Principle and a Settlement ...................... 6

II.    THE TERMS OF THE SETTLEMENT AGREEMENT ................................... 6
    A.    Proposed Settlement Class ................................................ 7
    B.    Prospective Programmatic, Non-Monetary Relief ................................ 7
    C.    Monetary Relief ........................................................ 9
    D.    Proposed Allocation and Distribution of the Settlement Fund. ............... 9
    E.    Additional Rights of Class Members Currently on Military Leave ..................... 11
    F.    Settlement Administration ................................................ 12
    G.    Attorneys' Fees and Costs and Service Award ................................ 12

III.    THE CASE SHOULD BE CERTIFIED AS A CLASS ACTION
    UNDER RULE 23 ........................................................... 13
    A.    The Rule 23(a) Prerequisites Are Satisfied ................................... 13
    B.    This Case Meets The Requirements of Rule 23(b) ............................... 16
        1.    The Requirements of Rule 23(b)(1) Are Satisfied ................... 16
        2.    The Requirements of Rule 23(b)(2) Are Satisfied ................... 19
        3.    The Requirements of Rule 23(b)(3) Are Also Satisfied ........................ 21
    C.    The Class Definition is Proper ............................................. 24
    D.    Plaintiff's Counsel Should Be Appointed as Class Counsel ............................... 25

IV.    THE COURT SHOULD GRANT PRELIMINARY APPROVAL ............................ 26
    A.    The Proposed Settlement Was Fairly and Honestly Negotiated ........................ 27
    B.    Serious Questions of Law and Fact Exist, Placing Outcome in Doubt ............... 28
        1.    Parties Dispute Whether United's Policy Violates USERRA ................. 28
        2.    Parties Dispute the Timeliness of the Claims ....................... 29
        3.    Parties Dispute the Appropriate Amount of Damages............................. 30
    C.    The Value of an Immediate Recovery Strongly Outweighs the Possibility
        of Further Relief After Protracted Litigation ................................... 31
    D.    Class Counsel Believes the Settlement Is Fair and Reasonable ........................ 32

V.    THE COURT SHOULD APPROVE THE PROPOSED NOTICE AND THE
    PROPOSED PROCESS FOR CHALLENGING UNITED'S DATA............................. 33

VI.    CONCLUSION........................................................................ 35

i

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*In Re A.H. Robins Co., Inc.*,
  880 F.2d 709 (4th Cir. 1989) ..............................................................................21

*Adams v. Anheuser-Busch Cos.*,
  No. 2:10-cv-826, 2012 U.S. Dist. LEXIS 42364 (S.D. Ohio Mar. 28, 2012)....................17, 19

*Allison v. Bank One*,
  289 F.3d 1223 (10th Cir. 2002) ..........................................................................31

*Allison v. Citgo Petroleum Corp.*,
  151 F.3d 402 (5th Cir. 1998) ..............................................................................20

*Amara v. Cigna Corp.*,
  Civ. No. 3:01cv2361, 2012 U.S. Dist. LEXIS 180355 (D. Conn. Dec. 20, 2012) .................20

*Amchem Prods. v. Windsor*,
  521 U.S. 591 (1997).........................................................................................16, 23

*Andritzky v. Concordia Univ. Chicago*,
  09-6633 (RWG), 2010 WL 1474582 (N.D. Ill. Apr. 8, 2010)...............................................30

*Barnes v. AT&T Pension Benefit Plan*,
  270 F.R.D. 488 (N.D. Cal. 2010)........................................................................17, 19

*Becher v. Long Island Lighting Co.*,
  164 F.R.D. 144 (E.D.N.Y. 1996) .......................................................................17, 18

*Belote v. Rivet Software, Inc.*,
  No. 12-cv-02792-WYD-MJW, 2013 U.S. Dist. LEXIS 74529 (D. Colo. May 28,
  2013) ............................................................................................................13, 14

*Berger v. Xerox Corp. Retirement Income Guarantee Plan*,
  338 F.3d 755 (7th Cir. 2003) ............................................................................20, 21

*Boos v. AT&T Inc.*,
  252 F.R.D. 319 (W.D. Tex. 2008) ........................................................................22

*Childs v. Unified Life Ins. Co.*,
  No. 10-CV-23-PJC, 2011 U.S. Dist. LEXIS 138818 (N.D. Okla. Dec. 2, 2011)............ *passim*

*DeGrado v. Jefferson Pilot Financial Ins. Co.*,
　　No. 02-cv-01533-WYD-BNB, 2009 U.S. Dist. LEXIS 42034 (D. Colo. May 1, 2009) ........ 31

*DeJulius v. New England Health Care Employees Pension Fund*,
　　429 F.3d 935 (10th Cir. 2005) ................................................................................... 33

*DG v. Devaughn*,
　　594 F.3d 1188 (10th Cir. 2010) ........................................................................... 13, 15

*Elliott Indus. v. BP Am. Prod. Co.*,
　　407 F.3d 1091 (10th Cir. 2005) ................................................................................. 16

*Freebird, Inc. v. Merit Energy Co.*,
　　No. 10-1154-KHV, 2012 U.S. Dist. LEXIS 173075 (D. Kan. Dec. 6, 2012) ................... 26, 27

*Garner v. Yellow Freight Sys., Inc.*,
　　19 Fed. Appx. 834 (10th Cir. Oct. 4, 2001) ................................................................ 29

*Gen. Tel. Co. v. Falcon*,
　　457 U.S. 147 (1982) ................................................................................................ 14

*Genden v.Merrill Lynch, Pierce, Fennar & Smith, Inc.*,
　　114 F.R.D. 48 (S.D.N.Y. 1987) ................................................................................. 22

*Goodman v. City of N.Y.*,
　　No. 10 Civ. 5236 (RJS), 2011 U.S. Dist. LEXIS 111069 (S.D.N.Y. Sept. 26, 2011) ............ 30

*Gottlieb v. Carrell*,
　　11 F.3d 1004 (10th Cir. 1993) ................................................................................. 31

*Harrington v. City of Albuquerque*,
　　222 F.R.D. 505 (D. N.M. 2004) ................................................................................. 23

*Hogan v. United Parcel Serv.*,
　　648 F. Supp. 2d 1128 (W.D. Mo. 2009) ..................................................................... 30

*Horton v. Leading Edge Mktg.*,
　　04-cv-00212-PSF-CBS, 2007 U.S. Dist. LEXIS 63533 (D. Colo. Aug. 28, 2007) ............... 35

*In re Integra Realty Resources, Inc.*,
　　262 F.3d 1089 (10th Cir. 2001) ................................................................................. 33

*J.B. ex rel. Hart v. Valdez*,
　　186 F.3d 1280 (10th Cir. 1999) ................................................................................. 22

*Johnson v. Meriter Health Servs. Emp. Retirement Plan*,
    702 F.3d 364 (7th Cir. 2012) (Posner, J.) ............................................................20

*Kerner v. City & Cnty. of Denver*,
    No. 11-cv-00256-MSK-KMT, 2013 U.S. Dist. LEXIS 41280
    (D. Colo. Mar. 25, 2013)...............................................................................14, 22

*La Fata v. Raytheon Co.*,
    207 F.R.D. 35 (E.D. Pa. 2002) ..........................................................................22

*Larionoff v. United States*,
    533 F.2d 1167 (D.C. Cir. 1976) ........................................................................17

*LaTourrette v. United Air Lines, Inc.*,
    1:12-cv-00635-WJM-CBS (D. Colo.)..................................................................2

*Leyva v. Medline Indus.*,
    716 F.3d 510 (9th Cir. 2013) .............................................................................22

*Lucas v. Kmart Corp.*,
    234 F.R.D. 688 (D. Colo. 2006) .............................................................27, 28, 32

*Lucas v. Kmart Corp.*,
    No. 99-cv-01923-JLK, 2006 U.S. Dist. LEXIS 21521 (D. Colo. Mar. 22, 2006)..................13

*Lucken Family Ltd. P'ship, LLP v. Ultra Resources, Inc.*,
    No. 09-cv-01543, 2010 U.S. Dist. LEXIS 80846 (D. Colo. June 30, 2010) ....................27, 28

*Maez v. Springs Auto Grp., LLC*,
    268 F.R.D. 391 (D. Colo. 2010) ........................................................13, 22, 24, 25

*Marcus v. Kansas Dep't. of Revenue*,
    209 F. Supp. 2d 1179 (D. Kan. 2002)..................................................................32

*McLain v. City of Somerville*,
    424 F. Supp. 2d. 329 (D. Mass. 2006) .................................................................29

*Medlock v. Host Int'l, Inc.*,
    No. 1:12-cv-02024-JLT, 2013 U.S. Dist. LEXIS 72740 (E.D. Cal. May 22, 2013) ..............20

*Mezyk v. U.S. Bank Pension Plan*,
    No. 3:09-cv-384, 2011 U.S. Dist. LEXIS 146758 (S.D. Ill. Dec. 21, 2011) .....................20

*Middleton v. City of Chicago*,
    578 F.3d 655 (7th Cir. 2009) .............................................................................29

*Mock v. City of Rome,*
 851 F. Supp. 2d 428 (N.D.N.Y. 2012) ................................................................30

*In re Motor Fuel Temp. Sales Practices Litig.,*
 MDL No. 1840, 2012 U.S. Dist. LEXIS 57981 (D. Kan. Apr. 24, 2012) ........................23, 24

*Ortiz v. Fibreboard Corp.,*
 527 U.S. 815 (1999) ................................................................18

*Patrick v. AK Steel Corp.,*
 No. 1:05cv681, 2008 U.S. Dist. LEXIS 104862 (S.D. Ohio. Oct. 27, 2008) ........................19

*Pender v. Bank of Am. Corp.,*
 269 F.R.D. 589 (W.D.N.C. 2010) ................................................................22

*Roark v. Lee Co.,*
 No 09-0402 (WJH), 2010 ................................................................30

*Rutter & Wilbanks Corp. v. Shell Oil Co.,*
 314 F.3d 1180 (10th Cir. 2002) ................................................................16, 27

*Savani v. Wash. Safety Mgmt. Solutions, LLC,*
 No. 1:06-cv-02805-MBS, 2012 U.S. Dist. LEXIS 121687
 (D.S.C. Aug. 28, 2012) ................................................................17, 19, 21

*Schilling v. Transcor Am., LLC,*
 No. C 08941 SI, 2010 U.S. Dist. LEXIS 20786 (N.D. Cal. Feb. 16, 2010) ........................23

*Serricchio v. Wachovia Sec., LLC,*
 606 F. Supp. 2d 256 (D. Conn. 2009) ................................................................31

*Sessions v. Owens-Ill., Inc.,*
 267 F.R.D. 171 (M.D. Pa. 2010) ................................................................19

*Tabor v. Hilti, Inc.,*
 703 F.3d 1206 (10th Cir. 2013) ................................................................13, 14, 22, 23

*In re Thornburg Mortg., Inc. Sec. Litig.,*
 912 F. Supp. 2d 1178 (D.N.M. Nov. 26, 2012) ................................................................15, 22

*Tomlinson v. El Paso Corp.,*
 No. 04-cv-02686-WDM-MEH, 2008 U.S. Dist. LEXIS 21668
 (D. Colo. Mar. 19, 2008) ................................................................24

*Vaszlavik v. Storage Tech. Corp.,*
 No. 95-B-2525, 2000 U.S. Dist. LEXIS 21129 (D. Colo. Mar. 10, 2000) ........................32

*Vickers v. General Motors Corp.*,
    204 F.R.D. 476 (D. Kan. 2001) .................................................................................24

*Wal-Mart Stores, Inc. v. Dukes*,
    131 S. Ct. 2541 (2011) .................................................................................14, 19, 20

*Wilkerson v. Martin Marietta Corp.*,
    171 F.R.D. 273 (D. Colo. 1997) ..........................................................................28, 30

*Woodall v. American Airlines, Inc.*,
    No. 3:06-cv-00072-M (N.D. Tex. Aug. 1, 2008) ...................................................20

## STATUTES

28 U.S.C. § 1658(a) ...........................................................................................................29

28 U.S.C. § 1961(a) ......................................................................................................31, 32

38 U.S.C. § 4318 ....................................................................................................... *passim*

38 U.S.C. § 4322 ...............................................................................................................24

38 U.S.C. § 4323 ...............................................................................................................30

38 U.S.C. § 4327 ........................................................................................................29, 30

## OTHER AUTHORITIES

5 James W. Moore et al., Moore's Fed. Prac. §§ 23.41[5] (3d ed. 2012) ......................17

Fed. R. Civ. P. 23 ....................................................................................................... *passim*

## PROPOSED SCHEDULE OF EVENTS

| DATE | EVENT |
|---|---|
| 10 Days After Filing of Proposed Settlement | United to provide Notices and Materials Required by CAFA, 28 U.S.C. § 1715(b) |
| 10 Business Days After Preliminary Approval | United to provide Class member data to Class Counsel and the Settlement Administrator |
| 30 Days After Preliminary Approval | Settlement Administrator to send Notice by U.S. mail and e-mail to the Class |
| 30 Days After Notice | Settlement Administrator submits declaration to Court confirming compliance with Notice procedures |
| 45 Days After Notice | Class Counsel files motion for attorneys' fees and costs and motion for service award for the Class Representative |
| 60 Days After Notice | Deadline for Class Members to mail challenge of United's data to Settlement Administrator |
| 60 Days After Notice | Deadline for Class Members to mail any objection to Settlement or request exclusion from Class (if Court permits opt-outs) |
| 45 Days After Deadline to Mail Challenge to United's Data | Deadline for Settlement Adjudicator to complete adjudications of challenges to United's data |
| 52 Days After Deadline to Mail Challenge to United's Data | Settlement Adjudicator submits declaration to Court confirming compliance with adjudication procedures |
| 14 Days After Settlement Adjudicator Files Declaration | Plaintiff files motion for final approval |
| No Fewer Than 90 Days after United Mails CAFA Materials (*i.e.*, 100 Days After Preliminary Approval).  *See* 28 U.S.C. § 1715(b), (d). | Fairness Hearing |

i

## MOTION AND INTRODUCTION

Plaintiff James Daniel Tuten ("Plaintiff" or "Tuten") hereby moves to certify the claims in this action as a class action under Rule 23(a) and (b) of the Federal Rules of Civil Procedure ("Rule 23"), moves for preliminary approval of the Settlement Agreement ("Settlement" or "Agmt.") between Plaintiff and Defendant United Air Lines, Inc. ("United") under Rule 23(e), and moves for approval of the Notice to the Class pursuant Rule 23(c) and (e).  As set forth below, the proposed settlement class satisfies the requirements for class certification under Rule 23(a) and 23(b)(1) or 23(b)(2), and also satisfies the standard for Rule 23(b)(3) certification.  The Settlement is fair, reasonable, and adequate, falls within the range of possible approval, and meets the requirements for preliminary approval in this Circuit.  Finally, the proposed Notice complies with Rule 23(c)(2) and (e)(1).

## I.  FACTUAL AND PROCEDURAL BACKGROUND

### A.  The Complaint

Plaintiff's Complaint alleges that United's policy for making pension contributions to United pilots who took long term military leave between 2000 and 2010 did not comply with the Uniformed Services Employment and Reemployment Rights Act ("USERRA").  Compl. ¶¶ 1-3, 49-55, Dkt. No. 1.[1]  To determine the "employee's compensation during the period of service" that will be used to calculate the pension contribution a returning servicemember must receive

---

[1] The Complaint alleges that under USERRA, an employee who returns from military leave is entitled to receive a lump sum pension contribution from his or her employer to put the employee in the same place as if he or she had continued working during such military leave.  *Id.* ¶ 3 (citing 38 U.S.C. § 4318).  The Complaint alleges that under USERRA, an employer must make a pension contribution to the returning servicemember "in the same manner and to the same extent the allocation occurs for other employees during the period of service."  38 U.S.C. § 4318(b)(1).

1

for a period of military service, USERRA provides two methods.  38 U.S.C. § 4318(b)(3).

Under the first method, when an employee's wages would be fixed during the period of leave,

the employer must determine compensation "at the rate the employee would have received but

for the period of service."  *Id.* § 4318(b)(3)(A).  But when an employee's compensation during a

period of service is "not reasonably certain," USERRA requires that the employer determine

compensation "on the basis of the employee's average rate of compensation during the 12-month

period immediately preceding such period (or, if shorter, the period of employment immediately

preceding such period)."  *Id.* § 4318(b)(3)(B).  Thus, when compensation is variable, the pension

contributions must be based on the employee's own *average* compensation over the 12 months

prior to military leave.

The Complaint alleges that Plaintiff and a class of United pilots were entitled to receive

contributions in their Pilots' Directed Account Retirement Income Plan ("PDAP") accounts for

periods of military leave based on each pilot's average compensation over the 12 months prior to

each period of long term military leave.  Compl. ¶¶ 14-15, 44-45, 53-55.  The Complaint alleges

that between 2000 and 2010, United implemented a uniform policy for calculating and making

pension contributions to pilots who took military leave pursuant to USERRA based on

compensation associated with the minimum flight hours established by the pilots' collective

bargaining agreement ("CBA").  *Id.* ¶¶ 2, 40, 44-45, 53.[2]  The Complaint alleges that for many

United pilots, the compensation based on monthly flight hours guaranteed under the pilots' CBA

---

[2] In late 2010 United "'changed its PDAP contribution policy for pilots on military leave to comply with USERRA,'" Compl. ¶ 46 (quoting Consent Decree in *LaTourrette v. United Air Lines, Inc.*, 1:12-cv-00635-WJM-CBS (D. Colo.)), but this prospective policy change did not offer a remedy to pilots who previously received pension contributions.  Compl. ¶ 48.

was lower than the average actual compensation received for the 12 months before their military leave, United's policy caused numerous pilots to receive smaller contributions. *Id.* ¶¶ 3-4, 45.

The Complaint asserts a single claim under 38 U.S.C. § 4318 and alleges that United's policy violated USERRA's requirement that employers make pension contributions "'on the basis of the employee's average rate of compensation during the 12-month period immediately preceding military leave, when an employee's average wage rate 'is not reasonably certain.'" Compl. ¶ 3 (quoting 38 U.S.C. § 4318(b)(3)).  The Complaint was brought on behalf of a class of United pilots who were subjected to the same policy and took military leave between 2000 and 2010, under Rule 23(b)(1), (2), or (3).  Compl. ¶¶ 9-30.  With respect to relief, the Complaint requested (1) a declaration that United's policy violated USERRA, (2) a declaration that Plaintiff and the Class are entitled to receive additional pension contributions based on compensation that reflects the average compensation for the 12 months prior to a period of military leave, (3) an order requiring United to recalculate pension contributions in accordance with the Court's declaration, to provide compensation for lost earnings on pension contributions that were not made, and to pay attorneys' fees and costs. *See* Request for Relief, Compl. at pp. 15-16.

**B.**     **The Parties Agree to Explore Settlement and Stay the Action**

Prior to the deadline for United to respond to the Complaint, United indicated its desire to resolve this action.  Declaration of Peter Romer-Friedman ("PRF Decl.") ¶ 3.  On August 11, 2012, the Parties moved to stay the action to explore the possibility of an early resolution.  Dkt. No. 12.  On August 20, 2012, the Court entered an order staying the case through November 19, 2012.  Dkt. No. 13.  The Court extended the stay through April 2, 2013.  *See* Order, Dkt. No. 16 (Oct. 23, 2012); Order, Dkt. No. 20 (Jan. 17, 2013).

### C.   The Parties Engage in Substantial Informal Discovery

From July 2012 through March 2013, Plaintiff's counsel engaged in informal discovery on issues related to both liability and damages.  PRF Decl. ¶ 4.  In July and August 2012, Plaintiff's counsel requested dozens of types of information about potential Class Members, a range of documents about United's pension plan and military leave policies, and information about prior cases that involved the same factual allegations as this action.  *Id*. ¶ 5.  From September through November 2012, United responded to these requests and, in doing so, produced databases containing detailed personnel information for each United pilot who took long term military leave since 2000.  *Id*. ¶ 6.  From September through December 2012, the Parties' counsel engaged in many conversations about United's policies on pension contributions and military leave and about the data United produced about each potential Class Member. *Id.* ¶ 8.  By obtaining this information, Plaintiff's counsel identified around 1,300 Class Members and around 2,000 Claims for specific periods of long term military leave.  *Id.* ¶ 9.  Plaintiff's Counsel also engaged an expert actuary to estimate the amount of potential damages.  *Id*. ¶ 11.

Plaintiff's counsel also undertook its own investigation to ascertain facts on a range of key issues, which included (1) interviewing over 100 putative Class Members to verify the accuracy of United's personnel data and understand how United's policy impacted putative Class Members, and (2) obtaining and reviewing documents from the U.S. Department of Labor concerning prior USERRA complaints involving United pilots.  PRF Decl. ¶¶ 2, 7.

### D.   The Parties Negotiate a Methodology to Estimate Potential Damages

In late 2012, with the assistance of its actuary, Plaintiff's counsel developed and proposed a comprehensive methodology to calculate the estimated potential damages of each

putative Class Member based on United's personnel data.  PRF Decl. ¶¶ 11-12. In mid-January 2013, the Parties reached an agreement on how to calculate such estimated potential damages. Agmt. Ex. A ("Agreed Damage Methodology").  In order to clarify certain matters, the Parties later supplemented their prior Agreement.  Agmt. Ex. B & C.

The primary goal of the Agreed Damage Methodology was to estimate the difference between the pension contributions putative Class Members received for each month in which they took long term military leave and what Plaintiff contended the Class Members should have received.  PRF Decl. ¶ 12.  The Agreed Damage Methodology had *three steps*.  **First**, Plaintiff's Actuary determined the PDAP contribution Plaintiff contends should have been made by United to each pilot for each month of a period of long term military leave.  **Second**, the Parties determined the PDAP contribution that was made by United for each month of a period of long term military leave.  **Third**, the Parties determined whether there is a shortfall between the contribution that should have been made for each month of a period of long term military leave and the contribution that was actually made or estimated to be made during the same month, and then added the amount of shortfalls for the months in which there were shortfalls.  Agmt. Ex. A, B & C (stating Agreed Damage Methodology); PRF Decl. Ex. F, Proposed Notice for Mandatory Class, Answer to Question 8 (summarizing methodology).

As United did not have personnel data needed to apply formulas contained in the Agreed Damage Methodology for certain claims, the Parties agreed to make certain assumptions to estimate the relevant personnel data for those claims when calculating damages.  PRF Decl. ¶¶ 12 ,14.  While Class Counsel believe the agreed assumptions are fair and reasonable, the

Settlement gives Class Members an opportunity to challenge United's data and present more accurate data that can be used to calculate their potential damages. *Id.* ¶ 14; Agmt. § VIII.3.C.

### E.  Plaintiff's Expert Calculates the Potential Damages of Class Members

To assist Plaintiff's counsel in developing a methodology for measuring the potential damages and in calculating potential damages, Plaintiff's counsel engaged an experienced actuary. PRF Decl. ¶ 11. After the methodology was agreed upon, Plaintiff's expert supervised a team of actuaries who calculated the potential damages for about 2,000 Claims of nearly 1,300 putative Class Members based on the Agreed Damage Methodology. *Id.* ¶ 15. In early March 2013, Plaintiff's expert reported the total potential damages of the approximately 2,000 Claims was about $4 million before interest. *Id.* ¶ 16. After applying an annual compound interest rate of 8% from the dates the contributions were made through April 1, 2013, Plaintiff's actuary calculated that the potential damages with 8% interest totaled about $6 million. *Id.*

### F.  The Parties Negotiate an Agreement in Principle and a Settlement

During March 2013, the Parties exchanged settlement proposals on potential monetary and non-monetary relief. *Id.* ¶ 17. On March 13 and 14, 2013, the Parties' counsel met in Chicago and engaged in intensive settlement discussions. *Id.* On the second day, the Parties reached an agreement in principle that was subsequently memorialized by the Parties in a 6-page Agreement in Principle executed on March 27, 2013. *Id.* Between April and August, the Parties negotiated a final Settlement Agreement, which was executed on August 12, 2013. *Id.* ¶ 18.

## II.  THE TERMS OF THE SETTLEMENT AGREEMENT

The Settlement Agreement provides substantial monetary benefits to all Class Members and important programmatic changes that will benefit all United pilots who take future military

leave.  As such, the Settlement's terms represent an outstanding recovery for the Class and

establish benefits for pilots who continue to work for United and serve their country.

### A. **Proposed Settlement Class**

Under the Settlement, the Parties agreed to ask the Court certify a mandatory class under

Rule 23(b)(1) or (2) or, alternatively, an opt-out class under Rule 23(b)(3), defined as follows:

> (1) all former or current pilots employed by  United who were participants in the PDAP between January 1, 2000 and October 31, 2010; and
>
> (2) who were on a Long Term Military Leave that began and ended between January 1, 2000 and October 31, 2010; and
>
> (3) on whose behalf United made defined contribution retirement plan contributions based on the monthly minimum flight hours guaranteed under the pilots' CBA; and
>
> (4) whose average flight hours during the 12-month period that immediately preceded a period of Long Term Military Leave (or, if shorter than 12 months, the period of employment immediately preceding such period of military leave) exceeded the monthly minimum flight hours guaranteed under the pilots' CBA.
>
> Excluded from the Proposed Settlement Class are all former or current pilots who previously reached settlements with or judgments against United in their individual USERRA claims or actions concerning inadequate retirement plan contributions for periods of military leave.

Agmt. §§ II.CC, IV.A-C.  The Settlement Class is substantially similar to the one

proposed in the Complaint.  *See* Compl. ¶ 9.

### B. **Prospective Programmatic, Non-Monetary Relief**

Under the Settlement Agreement, United has agreed to modify how it calculates defined

pension contributions for pilots who return from long term military leave and to make several

important changes to the process by which United informs and communicates with pilots about

the pension contributions that they receive for periods of long term military leave.  Agmt. § X.

7

*First*, United will change how it calculates monthly compensation to determine the pilot's defined pension contribution for a period of long term military leave. *Id*. § X.A. Since November 1, 2010, United has determined pension contributions for military service based on the 12-month average compensation prior to a period of leave, but has not included months in which a pilot had a significant amount of *unpaid* short term military leave. In the future, United will use the average monthly compensation from *all* 12 months for which it has data before a period of long term military leave, and will credit all military leave by counting compensation that was paid *or would have been paid* during the 12 month period. *Id*. This change is expected to increase pension contributions for pilots who take substantial short term military leave.

*Second*, United will maintain a written policy setting forth how pension contributions for pilots who take long term military leave are calculated, publish the policy in accessible places, and make the policy available to pilots upon request. *Id*. § X.B. The PDAP Plan Administrator will do the same. *Id*. Before November 2010, United had no such written policy.

*Third*, when United makes a pension contribution to a pilot who has returned from long term military leave, United will provide the pilot with written notice describing the data and methodology used to calculate the contribution. *Id*. § X.C. In the past, United did not disclose how it had specifically calculated pension contributions for periods of long term military.

*Fourth*, when a pilot notifies United of a plan to take long term military leave, United will provide the pilot with an estimate of the average number of hours the pilot worked over the prior 12 month period and a copy of United's long term military leave policy. *Id.* § X.D.

Collectively, these reforms will provide United's pilots with far better information about their pension contributions for periods of long term military leave, and should deliver increased

pension benefits for many pilots who take military leave to serve their country.

### C.      Monetary Relief

Under the Settlement, United will pay $6.15 million (the "Settlement Fund").  Agmt. §§ II.II, VII.  The Settlement Fund will be used to compensate Class Members for past allegedly unmade pension contributions (after deduction of any court-approved attorneys' fees, costs, and service award).  The proposed allocation of payments is based on the Agreed Damage Methodology.  Agmt. § VIII.C.  The payments will be made, to the extent possible, to Class Members' pension accounts in order to preserve their tax favorable treatment.  Agmt. VIII.F.2.  Based on the calculations of Plaintiff's expert actuary using United's personnel data, Class Counsel estimates that each Class Member will receive a payment *equal or greater than* the amount of the under payment between 2000 and 2010.  PRF Decl. ¶ 18.

### D.       Proposed Allocation and Distribution of the Settlement Fund.

Under the Settlement, Class Members will have an opportunity to challenge United's data that was used to calculate the Potential Estimated Damages for each Claim, and have an opportunity to demonstrate membership in the Class.  Agmt. § VIII.C.3.  Along with the Notice, each Class Member will receive a personalized worksheet containing the personnel information that was used to calculate the Potential Estimated Damages of each of his or her Claims.  *Id.* § VIII.C.3.a.  Each Class Member may submit a written challenge to the personnel data that was used to calculate his or her Potential Estimated Damages or to show that he or she is a Class Member whom the Parties did not identify.  *Id.* § VIII.C.3.a-b.  After United responds to any challenge and allows Class Members to provide any missing information, the Settlement Adjudicator will decide whether the person provided personnel data that is more reliable or

accurate than the data United provided, and will instruct the Settlement Administrator on

whether to use the original or revised data to calculate the Class Member's alleged damages. *Id.*

§ VIII.C.3.c.

After the Settlement Adjudicator completes determinations for all Class Members (other

than "Non-Responding ML Class Members"), the Net Settlement Fund[3] will be distributed to

those Class Members based on the Plan of Allocation approved by the Court. *Id.* §§ VIII.C,

VIII.F.1-5.  Under proposed Plan of Allocation, attached hereto as Exhibit D to the Settlement

Agreement, the Net Settlement Fund will be allocated as follows:

> **(1)** Each Claim will be allocated a pro rata share of the Net Settlement Fund based
> on the amount of its "Recognized Claim" compared to the total of the Potential
> Estimated Damages of all Claims.  The Recognized Claim is the amount
> calculated by Plaintiff's expert actuary using United's data or as determined by
> the Settlement Adjudicator on a successful challenge.  Agmt. Ex. D ¶¶ 2-3.

> **(2)** If all Recognized Claims are fully paid, the Later Claims[4] will receive a pro
> rata share of the remaining Net Settlement Fund compared to all Later Claims
> until all Later Claims receive the amount of their Recognized Claims plus 8%
> annual interest calculated from Contribution Date to March 31, 2013. *Id.* ¶ 4(a).

> **(3)** If Later Claims receive 8% annual interest on their Recognized Claims and
> there is more than $10,000 remaining in the Net Settlement Fund, the Earlier
> Claims (*i.e.*, claims that are not Later Claims) will receive a pro rata share of the
> then-remaining portion of the Net Settlement Fund based on the amount of each
> Earlier Recognized Claim as compared to the total Earlier Recognized Claims
> until all Earlier Recognized Claims receive the amount of the Recognized Claim
> plus 8% annual interest from the Contribution Date to March 31, 2013. *Id.* ¶ 4(b).

---

[3] The "Net Settlement Fund" is the $6.15 million Settlement Fund, plus any interest earned
before distribution to the Class, minus taxes paid on any interest, attorneys' fees and expenses
awarded, and any incentive award awarded.  Agmt. Ex. D ¶ 1.

[4] The "Later Claims" are claims where the Contribution Date was June 15, 2008 or later or where
the Contribution Date was earlier than June 15, 2008 but the Claim would have been timely on or
after October 10, 2008 based on a 4-year statute of limitations and any Servicemembers Civil
Relief Act tolling.  Agmt. Ex. D ¶ 5(a).

**(4)** After calculating each Class Member's share of the Net Settlement Fund, the Settlement Administrator will inform the PDAP Administrator of the share that each Class Member will receive. The PDAP Administrator will then determine the maximum amount of the Class Member's share that it can deposit into the Class Member's PDAP account in a tax favorable manner and deposit those funds. Any funds that cannot be deposited into a Class Member's PDAP account in a tax favorable manner will be paid directly to the Class Member in a check from the Settlement Administrator. Agmt. Ex. D ¶ 4; Agmt. §§ VIII.F.1-5.

### E.   Additional Rights of Class Members Currently on Military Leave

United has advised that approximately 169 of the nearly 1,300 Class Members were on military leave as of July 31, 2013. PRF Decl. ¶ 19. As those Class Members have rights under the Servicemembers Civil Relief Act ("SCRA"), the Parties have agreed to a set of procedures designed to preserve the rights of Class Members who are on long term military leave when the notice is mailed ("ML Class Members"), including the following:

**(1)** ML Class Members may choose between participating in the Settlement at the same time as other Class Members by affirmatively consenting to the Agreement before the Final Approval Date, and receiving their supplemental pension contributions when they return from long term military leave. Agmt. § VIII.D. For ML Class Members who do not affirmatively consent to Settlement before Final Approval, the Settlement Administrator will maintain a reserve fund containing the pro rata shares of the Net Settlement Fund for Recognized Claims of those ML Class Members ("Reserve Fund"). *Id.* § VIII.D.1-2.

**(2)** ML Class Members who do not affirmatively consent to the Settlement before Final Approval ("Non-Responding ML Class Members") may submit challenges to United's data upon returning from long term military leave. *Id.* § VIII.D.3. If a Non-Responding ML Class Member's challenge is successful, he or she will receive a higher amount than the amount set aside in the Reserve Fund for him or her. *Id.* § VIII.D.5. If the challenge is unsuccessful, he or she will receive the amount in the Reserve Fund for the relevant Recognized Claim. *Id.* § III.D.4.

**(3)** If Non-Responding ML Class Members' challenges cause the Reserve Fund to be fully depleted before all Claims are paid, United will make additional payments to the Reserve Fund. *Id.* § VIII.D.6.

**(4)** If the Court certifies a Rule 23(b)(3) opt-out class, Non-Responding ML Class Members can exercise opt out rights upon returning from military leave.  Agmt. § VIII.D.3.

**(5)** To ensure that all ML Class Members have an opportunity to exercise these additional rights, the Parties have agreed that the Court may exercise jurisdiction over this action for up to 6 years after the Final Approval Date.  Agmt. § XIII.B.

### F.      Settlement Administration

United has agreed to pay the cost of administering the Settlement and claims process, including hiring experienced settlement professionals to administer the Settlement ("Settlement Administrator") and adjudicate challenges to United's data ("Settlement Adjudicator").  Agmt. § VI.A.2.  The Settlement Adjudicator will review the submissions from any Class Members who challenge United's data, considering any information provided by United, deciding whether the Class Member's proffered data is more accurate than the data United provided to calculate Class Members' alleged damages, and communicating decisions to the Settlement Administrator. Agmt. § IX.B.  With approval by the Court, the Parties jointly recommend appointing Kurtzman Carson Consultants LLC ("KCC") to serve as both the Settlement Administrator and Settlement Adjudicator.  An overview of KCC's proposal to the Parties is attached.  *See* PRF Decl. Ex. H. The Parties received a number of other bids from settlement services firms, and will submit those bids to the Court should the Court so request.

### G.      Attorneys' Fees and Costs and Service Award

The Settlement allows Plaintiff's counsel to seek attorneys' fees, expenses and costs from the $6.15 million Settlement Fund, in an amount to be approved by the Court.  Agmt. § XI.A. The Settlement also allows Class Counsel to request that the Court authorize a service award for the sole Class Representative, in an amount to be approved by the Court.  *Id.* § XI.B.

III.     **THE CASE SHOULD BE CERTIFIED AS A CLASS ACTION UNDER RULE 23**

"To certify a class, Plaintiffs must first meet all of four requirements outlined in Rule 23(a)," and also "show that at least one of three conditions defined in Rule 23(b) is satisfied." *Tabor v. Hilti, Inc.*, 703 F.3d 1206, 1228 (10th Cir. 2013).  "In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." *DG v. Devaughn*, 594 F.3d 1188, 1194 (10th Cir. 2010).  Here, the Class satisfies Rule 23(a)'s four prerequisites and the standards for a mandatory class under Rules 23(b)(1) and (b)(2), and also meets the requirements of Rule 23(b)(3).

A.     <u>The Rule 23(a) Prerequisites Are Satisfied</u>

Rule 23(a)(1) requires that the members are "so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  This requirement can be satisfied based on the sheer size of the class, and classes of hundreds or thousands of members readily meet this requirement. *Belote v. Rivet Software, Inc.*, No. 12-cv-02792-WYD-MJW, 2013 U.S. Dist. LEXIS 74529, at *4 (D. Colo. May 28, 2013) (holding class of 125 employees satisfied numerosity); *Childs v. Unified Life Ins. Co.*, No. 10-CV-23-PJC, 2011 U.S. Dist. LEXIS 138818, at *16 (N.D. Okla. Dec. 2, 2011) (numerosity satisfied for class of 1,672 Medicaid recipients); *Lucas v. Kmart Corp.*, No. 99-cv-01923-JLK, 2006 U.S. Dist. LEXIS 21521, at *6 (D. Colo. Mar. 22, 2006) (proposed class with several thousand members satisfied numerosity).  In addition to size, courts consider geographic diversity, as well as whether many "claims are too small to be prosecuted individually as such solo actions are not economical or feasible." *Belote*, 2013 U.S. Dist. LEXIS 74529, at *4 (citing *Maez v. Springs Auto Grp., LLC*, 268 F.R.D. 391, 395 (D. Colo. 2010)).

Based on United's data, there are nearly 1,300 United pilots who are members of the proposed Class.  PRF Decl. ¶ 9.  They are geographically dispersed across the country and the world (as approximately169 were engaged in military service in late July 2013), and their claims are small on average—approximately $2,000 per Claim without interest and $3,000 with 8% annual interest.  *Id.* ¶ 16.  Thus, the impracticability of joinder is readily satisfied.

Rule 23(a)(2) requires "questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  What matters is "the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of litigation."  *Tabor*, 703 F.3d at 1228 (quoting *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 157 (1982), and *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2552 (2011)).  Where Plaintiffs challenge the application of an employer's uniform practice or policy, courts find commonality is readily satisfied.  *E.g.*, *Belote*, 2013 U.S. Dist. LEXIS 74529, at *5-6 (commonality satisfied in WARN Act case where workers "were terminated as part of a common plan"); *Kerner v. City & Cnty. of Denver*, No. 11-cv-00256-MSK-KMT, 2013 U.S. Dist. LEXIS 41280, at *3-4 (D. Colo. Mar. 25, 2013) (finding commonality where all black and Hispanic workers subjected to same employment test they claimed was "biased and discriminatory").

Here, the Complaint alleged that United's application of a uniform corporate policy violated the law and harmed all Class Members in the same manner.  Compl. ¶ 15.  Based on a review of United's data and United's own representations, Class Counsel confirmed all Class Members were subject to the same policy for calculating pension contributions when the pilots took and returned from long term military leave from January 1, 2000 to October 31, 2010.  PRF Decl. ¶ 10.  In short, United had a policy to calculate pension contributions based on the monthly minimum flight hours under the pilots' CBA.  *Id.*  Plaintiff claims this policy violated USERRA

14

for all Class Members because USERRA required United to calculate pension contributions based on the average rate of compensation or flight hours during the 12-month period that immediately preceded each pilot's period of long term military leave.  Compl. ¶¶ 44-45, 54 (citing 38 U.S.C. § 4318(b)(3)).  Based on United's personnel data, Class Counsel (with the assistance of an actuary), confirmed that all Class Members were harmed by this policy under Plaintiff's theory of the case.  PRF Decl. ¶¶ 10, 16.  Thus, commonality is readily satisfied here.

Typicality requires that the plaintiff's claims "are typical of the claims . . . of the class." Fed. R. Civ. P. 23(a)(3).  Typicality exists when "all class members are at risk of being subjected to the same harmful practices, regardless of any class member's individual circumstances," *Devaughn*, 594 F.3d at 1198, and differing amounts of damages do not defeat class typicality or other class requirements.  *In re Thornburg Mortg., Inc. Sec. Litig.*, 912 F. Supp. 2d 1178, 1223, 1238 (D.N.M. Nov. 26, 2012) (collecting Tenth Circuit cases).  Here, Plaintiff's claims arise out of the same practice and he suffered the same type of injury as all other Class Members.  Tuten took and returned from long term military leave between January 1, 2000 and October 31, 2010. Compl. ¶ 44; Declaration of James Daniel Tuten ¶ 3 ("Tuten Decl.").  After returning, he received pension contributions under United's policy and, alleges he was harmed in the same way as other Class Members, as he received lower contributions under United's policy than he claims were required by USERRA.  Tuten Decl. ¶¶ 7-8.  As such, Plaintiff's claim is typical of other Class Members.

Adequacy of representation requires plaintiff to fairly and adequately protect the interests of the class.  Fed. R. Civ. P. 23(a)(4).  In this Circuit, adequacy involves two inquiries: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members

and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of

the class." *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1187-88 (10th Cir. 2002).

Class Counsel is unaware of any actual or potential conflicts that may conflict with the other

Class Members.  PRF Decl. ¶ 21.  Class Counsel have demonstrated that they will vigorously

prosecute this action.  Not only have they have spent substantial time and resources to advance

this case, including the expenditure of over $200,000 in out-of-pocket expenses, but they also

have obtained a Settlement that recovers at least 100% of the potential actual damages for all

Class Members and provides important prospective reforms for all United pilots.[5]

B.     **This Case Meets The Requirements of Rule 23(b)**

1.     **The Requirements of Rule 23(b)(1) Are Satisfied**

Rule 23(b)(1) authorizes certification when "prosecuting separate actions by or against

individual class members would create a risk of":

> (A) inconsistent or varying adjudications with respect to individual class members
> that would establish incompatible standards of conduct for the party opposing the
> class; or (B) adjudications with respect to individual class members that, as a
> practical matter, would be dispositive of the interests of the other members not
> parties to the individual adjudications or would substantially impair or impede
> their ability to protect their interests.  Fed. R. Civ. P. 23(b)(1).[6]

Rule 23(b)(1)(A) "takes in cases where a party is obliged by law to treat the members of

the class alike . . . or where the party must treat all alike as a matter of practical necessity."

*Amchem Prods. v. Windsor*, 521 U.S. 591, 614 (1997).  Certification under Rule 23(b)(1) is

common in pension cases, including under ERISA and USERRA, as federal law requires pension

---

[5]  Plaintiff's counsel's experience in these kinds of disputes is addressed below.  *Infra* § III.D.

[6]  "[C]ertification under Rule 23(b)(1) and (b)(2), carr[y] no right to opt out."  *Elliott Indus. v. BP
Am. Prod. Co.*, 407 F.3d 1091, 1104 n.5 (10th Cir. 2005) (citing Fed. R. Civ. P. 23(c)(2)(B)).

plans to treat all similarly situated participants in a uniform manner.  *Savani v. Wash. Safety Mgmt. Solutions, LLC*, No. 1:06-cv-02805-MBS, 2012 U.S. Dist. LEXIS 121687, at *12-13 (D.S.C. Aug. 28, 2012) (observing that "cases where plaintiffs challenge the computation of [pension] benefits are often certified under Rule 23(b)(1)(A)").  In cases alleging that an employer or plan deprived employees of the same pension benefits, "individual actions might produce inconsistent adjudications" and "result in incompatible standards of conduct for the Plan administrator," who has an obligation "to treat all similarly situated participants, such as the proposed class members, in a consistent manner."  *Adams v. Anheuser-Busch Cos.*, No. 2:10-cv-826, 2012 U.S. Dist. LEXIS 42364, at *25-29 (S.D. Ohio Mar. 28, 2012) (certifying Rule 23(b)(1)(A) class for pension benefits); *Barnes v. AT&T Pension Benefit Plan*, 270 F.R.D. 488, 496 (N.D. Cal. 2010) (reaching same conclusion in pension benefit calculation case).

The same principle applies to actions for pension benefits under USERRA.  *See Becher v. Long Island Lighting Co.*, 164 F.R.D. 144, 153 (E.D.N.Y. 1996) (certifying Rule 23(b)(1) class under USERRA); *cf. Larionoff v. United States*, 533 F.2d 1167, 1182 n. 36 (D.C. Cir. 1976) (certifying a Rule 23(b)(1)(A) class of enlisted personnel seeking certain re-enlistment bonuses from the navy, as government was required to treat all class members alike in awarding re-enlistment bonuses).  In fact, a leading civil procedure treatise has cited *Becher*, which involved claims for pension benefits under ERISA and USERRA, as *the example* of a "labor relations" case suitable for Rule 23(b)(1)(A) certification.  5 James W. Moore *et al.*, *Moore's Fed. Prac*. § 23.41[5] (3d ed. 2012).  As *Becher* observed, without a certified class under Rule 23(b)(1) "[e]ach case could conceivably result in different courts reaching conflicting decisions" about

benefits the plaintiffs claimed they were owed, "but also the applicability of the various defenses the defendants seek to interpose." *Becher*, 164 F.R.D. at 153.

As in *Becher* and other pension cases, here Plaintiff seeks a determination that for nearly 1,300 Class Members United should have calculated their defined pension contributions for periods of long term military leave based on compensation that reflected each pilot's own average compensation over the 12 months prior to each period of long term military leave, and that United violated USERRA by failing to do so.  Moreover, United and its pension plan are required to provide pension benefits to plan participants in a consistent manner.  In the absence of a mandatory Rule 23(b)(1) class, separate lawsuits could result in conflicting or varying adjudications about how to calculate the benefits of pilots who returned from military leave, and would require the Plan Administrator to face conflicting standards on how to administer the plan. Thus, a class-wide determination and resolution about the application of USERRA to United pilots who took long term military leave from January 1, 2000 to October 31, 2010 provides for a single, efficient adjudication of these claims consistent with Rule 23(b)(1)(A).

Rule 23(b)(1)(B) certification is also appropriate, as litigating these claims individually "would have the practical if not technical effect of" concluding or impairing the interests of persons who are not parties to those individual lawsuits. *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 833 (1999).  In *Ortiz*, the Supreme Court recognized that one of the "classic examples" where individual actions could risk the impairment of others' rights is "the adjudication of the rights of all participants in a fund in which the participants had common rights." *Id.* at 834-36 & n.14.  Applying this standard, courts routinely certify Rule 23(b)(1)(B) classes of employees seeking to enforce their common pension rights.  As a pension plan must treat all participants

18

alike, "the adjudication of the claims of one class member may set the standard as to how the other class members are treated," and an individual action will have the "practical effect" of impairing the rights of class members.  *Adams*, 2012 U.S. Dist. LEXIS 42364, at *30-31.[7]

As United applied the same policy to calculate the pension contributions for pilots who returned from military leave from 2000 to 2010, a determination about whether that policy was consistent with USERRA would necessarily have a practical effect on the rights of other participants, regardless of whether they were included in the suit.  As such, Rule 23(b)(1)(B) certification is appropriate to ensure a uniform resolution for other Class Members.

### 2.      The Requirements of Rule 23(b)(2) Are Satisfied

Rule 23(b)(2) permits certification when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  Fed. R. Civ. P. 23(b)(2).  A class action that seeks both injunctive and monetary relief may be certified under Rule 23(b)(2) when the monetary relief is "incidental" to the injunctive or declaratory relief.  *See Dukes*, 131 S. Ct. at 2557.  Monetary relief is "incidental" to injunctive or declaratory relief when damages "'flow directly from liability to the class *as a whole* on the claims forming the basis of the injunctive or declaratory relief,'" and additional individual hearings will not be required "'to resolve the disparate merits of each individual's case.'"  *Id.* at 2560 (quoting

---

[7] *See also Savani*, 2012 U.S. Dist. LEXIS 121687, at *13-14; *Barnes*, 270 F.R.D. at 496; *Sessions v. Owens-Ill., Inc.*, 267 F.R.D. 171, 179 (M.D. Pa. 2010) (certifying Rule 23(b)(1)(B) class in action challenging denial of enhanced retirement benefits, because of "a very real danger that an adjudication in which one plaintiff would affect other plaintiffs' ability to protect their own interests"); *see Patrick v. AK Steel Corp.*, No. 1:05cv681, 2008 U.S. Dist. LEXIS 104862, at *14 (S.D. Ohio. Oct. 27, 2008) (certifying Rule 23(b)(1)(B) class in action challenging company's reduction of benefits for widows and widowers, as "Plaintiff's claims will, as a practical matter, adjudicate the interests of all widows under the plan").

*Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 415 (5th Cir. 1998)).  In *Dukes*, plaintiffs'

monetary claims could not be certified under Rule 23(b)(2), as determining backpay awards

would be highly individualized in light of Title VII's "detailed remedial scheme" that ordinarily

requires each class member to have a separate hearing on liability and damages *after* a class wide

liability trial.  *See Dukes*, 131 S. Ct. at 2560-61; *accord Medlock v. Host Int'l, Inc.*, No. 1:12-cv-

02024-JLT, 2013 U.S. Dist. LEXIS 72740, at *12 (E.D. Cal. May 22, 2013) (describing the

unique remedial scheme at issue in *Dukes*).

    After *Dukes*, courts have concluded that claims involving the calculation of pension

benefits under a common policy and seeking an order directing the recalculation of benefits can

be certified under Rule 23(b)(2*). E.g.*, *Amara v. Cigna Corp.*, Civ. No. 3:01cv2361, 2012 U.S.

Dist. LEXIS 180355, at *55-58 (D. Conn. Dec. 20, 2012); *Mezyk v. U.S. Bank Pension Plan*, No.

3:09-cv-384, 2011 U.S. Dist. LEXIS 146758, at *7-8 (S.D. Ill. Dec. 21, 2011).  As the Seventh

Circuit explained in reaching this conclusion, in such a situation, the relief applies to the class as

a whole and any monetary relief flows directly and automatically from the order requiring a

recalculation of the benefits, rendering the calculation of each class member's monetary relief a

mechanical process that is incidental to the declaratory and injunctive relief.  *Johnson v. Meriter

Health Servs. Emp. Retirement Plan*, 702 F.3d 364, 365-66, 369-72 (7th Cir. 2012) (Posner, J.)

(confirming that its pre-*Dukes* decision, *Berger v. Xerox Corp. Retirement Income Guarantee

Plan*, 338 F.3d 755, 763-64 (7th Cir. 2003), still applies).  Applying the same incidental relief

test endorsed in *Dukes*, a district court in 2008 certified a Rule 23(b)(2) class of pilots alleging

USERRA rights to employment benefits such as vacation time and sick leave.  *Woodall v.

American Airlines, Inc.*, No. 3:06-cv-00072-M (N.D. Tex. Aug. 1, 2008), attached as Ex. E to

PRF Decl.  Here too, United has acted on grounds that apply generally to the Settlement Class by subjecting all of them to the same uniform policy of calculating pension contributions for pilots who took military leave from January 1, 2000 to October 31, 2010.

In addition, the Complaint primarily seeks a declaration that United's uniform policy violated USERRA and that United must recalculate the pension contributions in accordance with the 12-month average compensation figure required by USERRA.  Request for Relief, Compl. at pp. 15-16.  As the Seventh Circuit has explained, a suit seeking a declaration about the manner in which pension benefits are calculated is proper declaratory relief and any follow-on relief requiring a recalculation and payment pursuant to that declaration allows the suit to be "maintained under Rule 23(b)(2)."  *Berger*, 338 F.3d at 763-64.  Here, because any declaration would apply to the Class as a whole and require United to recalculate the benefits owed as determined by the Court, any monetary relief will flow directly and automatically from the declaration.  As demonstrated by the Settlement, which relies upon an objective formula for calculating Class Members' payments, once a formula (*e.g.*, the Agreed Damage Methodology) is established, the actual calculation of the payments becomes a mechanical task of applying the formula to the data.  Thus, certification under Rule 23(b)(2) is proper.

### 3.      The Requirements of Rule 23(b)(3) Are Also Satisfied

When a class may be certified under Rule 23(b)(1) or 23(b)(3), "a court should [only] certify the action under (b)(1) so that the judgment will have res judicata effect as to all the class," which "furthers the policy underlying (b)(1) class suits[.]"  *Savani*, 2012 U.S. Dist. LEXIS 121687, at *14-15 (citing *In Re A.H. Robins Co., Inc.*, 880 F.2d 709, 728 (4th Cir. 1989),

and *Pender v. Bank of Am. Corp.*, 269 F.R.D. 589, 598 (W.D.N.C. 2010)).  But if this Court reaches the question of Rule 23(b)(3) certification, this type of certification is clearly proper.

"Rule 23(b)(3) allows certification of a class when the court finds that 'questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is therefore superior to other available methods for fairly and efficiently adjudicating the controversy.'" *Tabor*, 703 F.3d at 1230 (quoting Fed. R. Civ. P. 23(b)(3)).  When the "'liability issue is common to the class, common questions are held to predominate over individual questions.'" *Maez*, 268 F.R.D. at 397 (quoting *Genden v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 114 F.R.D. 48, 52 (S.D.N.Y. 1987)).  Where employers or pension plans allegedly violated federal law via "a policy that applied uniformly to all members of the [] Class," common issues predominate.  *La Fata v. Raytheon Co.*, 207 F.R.D. 35, 44 (E.D. Pa. 2002) (collecting cases); *Boos v. AT&T Inc.*, 252 F.R.D. 319, 325-26 (W.D. Tex. 2008) (finding common issues predominated in case alleging a program failed to comply with ERISA).

While the application of the same policy may result in differing amounts of damages, mere differences in the amount of damages cannot defeat a finding of predominance.  *Kerner*, 2013 U.S. Dist. LEXIS 41280, at *8-9 (finding individual calculation of damages did not undermine predominance of "broad and substantial" common issues); *Thornburg Mortg., Inc.*, 912 F. Supp. 2d at 1223, 1238 (D. N.M. 2012) (finding common issues predominated despite need to calculate individual damages) (citing *J.B. ex rel. Hart v. Valdez*, 186 F.3d 1280, 1298 (10th Cir. 1999)); *accord Leyva v. Medline Indus.*, 716 F.3d 510, 514 (9th Cir. 2013) ("[t]he amount of damages is invariably an individual question and does not defeat class action treatment.") (citation and internal quotations omitted).  Here, all Class Members were subjected

to the same uniform policy for calculating pension contributions and all were harmed in the same manner.  Thus, common issues predominate over any individual ones.

The superiority requirement involves evaluation of four factors: "(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the difficulties likely to be encountered in the management of a class action."  *Tabor*, 703 F.3d at 1230.  For a settlement class, manageability is not a consideration.  *Amchem Prods.*, 521 U.S. at 620.  Here, all relevant factors support a finding that a class action is superior to individual adjudication of Class Members' claims.

*First*, when the size of the claims is small compared to the cost of litigating them, "class members do not have a strong interest in individually controlling the prosecution of separate actions."  *In re Motor Fuel Temp. Sales Practices Litig.*, MDL No. 1840, 2012 U.S. Dist. LEXIS 57981, at *93 (D. Kan. Apr. 24, 2012).  Here, the average Claim is only around $2,000 before interest and around $3,000 with 8% annual interest, which pales in comparison to the cost of litigating these claims.  PRF Decl. ¶ 16.

*Second*, where only a handful of potential class members have filed a lawsuit, it further supports a finding of superiority.  *Schilling v. Transcor Am., LLC*, No. C 08941 SI, 2010 U.S. Dist. LEXIS 20786, at *33-34 (N.D. Cal. Feb. 16, 2010) (finding superiority despite the filing of a number of similar individual lawsuits, including pending cases); *Harrington v. City of Albuquerque*, 222 F.R.D. 505, 518 (D. N.M. 2004) (finding superiority where another individual lawsuit had been filed).  Of the nearly 1,300 United pilots who have these claims, United has

identified only a single individual legal action that was filed in court, that action did not raise any class claims, and it was settled a year ago.  PRF Decl. ¶ 22; *see Childs*, 2011 U.S. Dist. LEXIS 138818, at *27 (superiority supported by lack of similar class action).  While United has identified 13 administrative complaints filed with the Department of Labor that raised a similar issue,[8] most of these claims were settled and none has proceeded to litigation.  PRF Decl. ¶ 22.

*Third*, the amount of monetary relief negotiated for Class Members in this case shows why a single class action is superior to requiring pilots to litigate their Claims individually.

*Finally*, where the vast majority of Class Members possess small or modest sized Claims and litigating them will involve the same legal and factual issues, "it is desirable to concentrate the claims in a single forum."  *In re Motor Fuel Litig.*, 2012 U.S. Dist. LEXIS 57981, at *93. Here, as the average claim is $2,000, concentrating the litigation in a single forum is desirable.

### C.    The Class Definition is Proper

"Although not mentioned specifically in Rule 23 itself, a prerequisite to class certification is an appropriate class definition."  *Maez*, 268 F.R.D. at 394 (citation omitted).  A proper class definition only includes individuals who have the same type of claim as the plaintiff and has a temporary limitation.  *Id.*  (citing *Vickers v. General Motors Corp.*, 204 F.R.D. 476, 477-78 (D. Kan. 2001)); *Tomlinson v. El Paso Corp.*, No. 04-cv-02686-WDM-MEH, 2008 U.S. Dist. LEXIS 21668, at *23 (D. Colo. Mar. 19, 2008) (class definition should "limit the class to individuals" subjected to the challenged practice).  The Settlement Class definition identifies and includes the appropriate persons: United pilots who were participants in United's pension plan,

---

[8] The U.S. Department of Labor has the responsibility under federal law to investigate USERRA complaints filed by private sector workers, attempt to resolve them, and refer such complaints to the U.S. Department of Justice for litigation.  *See* 38 U.S.C. §§ 4322(a)-(f), 4323(a).

who began and ended long term military leave between January 1, 2000 and October 31, 2010, who were subjected to United's policy for calculating defined pension contributions based on the monthly minimum flight hours, and whose average compensation during the 12-month period before a period of long term military leave exceeded the monthly minimum flight hours.  And the definition appropriately excludes any United pilots who previously resolved the same type of USERRA claims against United through a settlement or judgment.  Agmt. §§ II.CC, IV.A.

### D.   Plaintiff's Counsel Should Be Appointed as Class Counsel

Rule 23(g) requires the Court to appoint Class Counsel.  Fed. R. Civ. P. 23(g) ("a court that certifies a class must appoint class counsel.").  The factors relevant to that determination are (1) the work counsel did in identifying or investigating potential claims; (2) counsel's experience in handling class actions, or other complex litigation, and the types of claims asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the resources that counsel will commit to representing the class.  *Id.*; *Maez*, 268 F.R.D. at 398.

All of these factors support the appointment of Plaintiff's counsel as Class Counsel. First, Plaintiff's counsel undertook a substantial pre-suit investigation to identify the legal and factual claims in this action, including interviewing dozens of United pilots, and continued their investigation during the litigation and settlement talks.  PRF Decl. ¶¶ 2, 7.

Second, Plaintiff's Lead Counsel, Cohen Milstein Sellers & Toll PLLC, is a leading law firm that represents plaintiffs in employment and employee benefits class actions.  *Id*. ¶ 23 & Ex. A.  Cohen Milstein has served as lead or co-lead counsel in numerous employment and employee benefits class actions, including those involving claims for pension benefits.  *Id.*  Thomas

Jarrard, Matthew Z. Crotty, and Robert W. Mitchell are all veterans and/or active servicemembers whose practices focus on USERRA. *Id.* Ex. B, C, & D.

Third, Plaintiff's counsel have deep knowledge and experience in the areas of pension benefits and servicemembers' rights under USERRA. Mr. Barton of Cohen Milstein has more than a dozen years of experience litigating and trying employee benefit class actions, especially pension cases. *Id.* ¶ 23 & Ex. A. Messrs. Jarrard, Crotty, and Mitchell have collectively litigated dozens of USERRA cases. *See id.* Ex. B, C & D. And Mr. Romer-Friedman of Cohen Milstein served as counsel to the U.S. Senate Labor Committee Chairman on USERRA issues. *Id.* ¶ 24.

Fourth, Plaintiff's counsel are committed to spending the resources necessary to vigorously prosecute the case and have a long track record of committing resources to significant class cases. They have already shown such a commitment by spending substantial attorney time prosecuting the case and major resources hiring an expert to calculate damages. *Id.* ¶ 11.

## IV.    THE COURT SHOULD GRANT PRELIMINARY APPROVAL

Under Rule 23(e), a court may approve a class action settlement after providing notice to all class members, holding a hearing, and making a "finding that [the settlement] is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(1)-(2). Before providing notice, the court determines whether to grant preliminary approval of the agreement and, in considering whether to grant preliminary approval, courts apply a "less stringent" standard than at the final approval stage. *Freebird*, No. 10-1154-KHV, 2012 U.S. Dist. LEXIS 173075, at *1 (collecting cases). At this stage, the court merely "determine[s] whether the proposed settlement is within the range of possible approval." *Id.* "The purpose of the preliminary approval process is to determine

whether there is any reason *not* to notify the class members of the proposed settlement and to proceed with a fairness hearing." *Lucas v. Kmart Corp.*, 234 F.R.D. at 693 (emphasis added).

Preliminary approval is appropriate "where the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval." *Freebird*, 2012 U.S. Dist. LEXIS 173075, at *12. (internal citations and quotations omitted). To determine whether a settlement is *within the range of possible approval* in order to grant preliminary approval, courts in this Circuit often consider four relevant factors: (1) whether the proposed settlement was fairly and honestly negotiated; (2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and (4) the judgment of the parties that the settlement is fair and reasonable. *Id.* at *11-12; *Lucas*, 234 F.R.D. at 693; *Childs*, 2011 U.S. Dist. LEXIS 138818, at *28-38 (considering same factors for preliminary approval); *Lucken Family Ltd. P'ship, LLLP v. Ultra Resources, Inc.*, No. 09-cv-01543, 2010 U.S. Dist. LEXIS 80846, at *8-10 (D. Colo. June 30, 2010) (same). [9]

## A.   The Proposed Settlement Was Fairly and Honestly Negotiated

The proposed Settlement is the product of extensive arm's-length, informed, non-collusive negotiations that took place over many months. Agmt. § III.C-D. The Settlement was reached only after vigorous investigation by Plaintiff's counsel, informal discovery among the Parties, legal research and analysis on a range of issues, an in-depth expert damages analysis, and

---

[9] These are the same four factors the Tenth Circuit has held should be evaluated to grant final approval of a class action settlement. *See Rutter*, 314 F.3d at 1188.

advocacy by both Parties.  PRF Decl. ¶¶ 2, 4-16.  In particular, the Parties negotiated an

agreement only after Plaintiff's expert had calculated the potential damages for each Claim based

on the Agreed Damage Methodology that the Parties agreed to follow.  *Id.* ¶¶ 15-17.  Under such

circumstances, there can be no doubt the Settlement is the product of informed, fair, and honest

negotiations among experienced counsel.  *Lucken*, 2010 U.S. Dist. LEXIS 80846, at *8.

**B.**     **Serious Questions of Law and Fact Exist, Placing the Outcome in Doubt**

"Although it is not the role of the Court at this stage of the litigation to evaluate the

merits," here "it is clear that the parties could reasonably conclude that there are serious

questions of law and fact that exist such that they could significantly impact this case if it were

litigated."  *Lucas*, 234 F.R.D. at 693-94 (citing *Wilkerson v. Martin Marietta Corp.*, 171 F.R.D.

273, 284 (D. Colo. 1997)).  In this action, there are several key disputed questions that could

substantially impact the ability of the Class Members to obtain relief in this action.

**1.**     **Parties Dispute Whether United's Policy Violates USERRA**

If the action were litigated further, Class Counsel expects that United would contest its

liability under USERRA.  In particular, Class Counsel expects that United would contest whether

the compensation a pilot would have earned during a period of military service is "not

reasonably certain," within the meaning of 38 U.S.C. § 4318(b)(3)(B), and would assert that its

policy for calculating pension contributions based on monthly compensation associated with the

monthly minimum flight hours from January 1, 2000 to October 31, 2010 complied with

USERRA.  Although Plaintiff strongly disagrees with such arguments, there is a possibility that

these legal arguments might be successful.

2.      **Parties Dispute the Timeliness of the Claims**

For a substantial portion of the approximately 2,000 Claims, United would assert that

they are untimely.  Although USERRA *currently* does not have a statute of limitations period, 38

U.S.C. § 4327(b), there is significant disagreement about what limitations period, if any, applied

to USERRA claims before October 10, 2008 – when Congress enacted an amendment to

eliminate any statute of limitations period – and the impact of the 2008 amendment.[10]

Some courts have held that from 1994 to 2008 USERRA never had any time limitation

other than the doctrine of laches, while other courts have held that the four-year default statute of

limitations period in 28 U.S.C. § 1658(a) applied to USERRA when Congress enacted USERRA

in 1994.  *Compare Garner v. Yellow Freight Sys., Inc.*, 19 Fed. Appx. 834, 836 n.2 (10th Cir.

Oct. 4, 2001) (courts only "look to the equitable doctrine of laches to determine if a claim is

time-barred"), and *McLain v. City of Somerville*, 424 F. Supp. 2d. 329, 336 (D. Mass. 2006)

(same), *with Middleton v. City of Chicago*, 578 F.3d 655, 662 (7th Cir. 2009) (4 year limitations

period applied to USERRA claims before 2008).  A decision by this Court that USERRA never

had a statute of limitations would mean that all Claims in this action are timely.  However, if this

Court were to agree with United that a four-year statute of limitations applied to USERRA

before 2008, then the timeliness of any Claims that accrued before 2008, which constitutes a

large number of Claims (including a Claim of Plaintiff Tuten), would depend upon the Court's

interpretation of the 2008 amendment to USERRA.[11]  United would likely argue that the 2008

[10] In 2008, Congress enacted 38 U.S.C. § 4327(b) to "clarify that the original intent of Congress
was that USERRA would not be subject to a federal or state statute of limitations period."  Rep.
No. 110-449, at 26 (2008).

[11] Most courts interpret the 2008 amendment to be partially retroactive, so that a USERRA action
that accrued before the 2008 amendment would remain timely forever so long as the claim could

amendment did not impact claims that accrued before October 10, 2008 and, if successful, Plaintiff estimates that over 40 percent of the nearly 2,000 Claims would be deemed untimely.

Furthermore, Class Counsel expects that United would likely raise a laches defense, as many of the Claims involve periods of military leave that ended a decade before this lawsuit was filed. While Plaintiff believes Congress eliminated a defense of laches in the 2008 amendment, *see* 38 U.S.C. § 4327(b), and that United could not prove all of the necessary elements of laches, there is a possibility that United could prevail on this issue if the case were furthered litigated.

### 3.    Parties Dispute the Appropriate Amount of Damages

Plaintiff expects that United would challenge Plaintiff's arguments about the amount of damages that Class Members should receive. *E.g.*, *Wilkerson*, 171 F.R.D. at 287. For settlement purposes, the Parties agreed on a methodology for calculating the potential damages of Class Members. In litigation, however, United would likely dispute many aspects of the Agreed Damage Methodology. If United were to prevail on any of these issues, the Class would receive lower damages than under the Settlement—even if the Plaintiff were otherwise to succeed with his claims. Also, under 38 U.S.C. § 4323(d)(1)(C), liquidated damages are awarded only if the court determines that the employer's failure to comply with the provisions of USERRA was willful. While Plaintiff's Counsel believes they have good arguments on liquidated damages, United can be expected vigorously to oppose any such damages and recovery is far from certain.

---

have been timely filed on or after October 10, 2008 based on a four-year statute of limitations period. *Goodman v. City of N.Y.*, No. 10 Civ. 5236 (RJS), 2011 U.S. Dist. LEXIS 111069, at *22-23 (S.D.N.Y. Sept. 26, 2011) (citing *Andritzky v. Concordia Univ. Chicago*, 09-6633 (RWG), 2010 WL 1474582, at *4-5 (N.D. Ill. Apr. 8, 2010), and *Roark v. Lee Co.*, No 09-0402 (WJH), 2009 WL 4041691, at *5 (M.D. Tenn. Nov. 20, 2009)). Some courts also have concluded that any USERRA action *filed after* the 2008 amendment is timely no matter when it accrued. *Mock v. City of Rome*, 851 F. Supp. 2d 428, 436 & n.1 (N.D.N.Y. 2012); *Hogan v. United Parcel Serv.*, 648 F. Supp. 2d 1128, 1137 (W.D. Mo. 2009).

Finally, Plaintiff expects the Parties would dispute the rate of pre-judgment interest, if any, to apply to the Claims for the periods between when United made the pension contributions to the Class Members and the date upon which judgment is entered.  Plaintiff  would argue for an annual pre-judgment interest of 8% in benefits cases based on Colorado's pre-judgment interest law, while United would likely urge the Court to award no pre-judgment interest or apply the *post*-judgment interest rate, under 28 U.S.C. § 1961(a), as the *pre*-judgment interest.[12]  Applying the rate under 28 U.S.C. § 1961(a), which reflects the rate of U.S. Treasury bonds, would likely result in annual interest rates below 1% for many years during the Class Period, thereby leading to a dramatically smaller recovery for Class Members than the rate used in the Settlement.

### C.      The Value of an Immediate Recovery Strongly Outweighs the Possibility of Further Relief After Protracted Litigation

"The value of the immediate recovery," that is, "the monetary worth of the settlement" must be weighed against "the possibility of some greater relief at a later time, taking into consideration the additional risks and costs that go hand in hand with protracted litigation." *Gottlieb v. Carrell*, 11 F.3d 1004, 1015 (10th Cir. 1993).  Based on the calculations by Plaintiff's expert using United's personnel data, the Settlement is the equivalent of at least 100% of the pension contributions that United failed to make as a result of its policy that Plaintiff challenges and also includes a significant amount of annual interest on top of the 100% recovery.  It is not only possible, but a realistic likelihood that the Class would achieve no better a result if they litigated this case fully.  Further litigation would expose most, if not all, Class Members to

---

[12] *Compare Allison v. Bank One*, 289 F.3d 1223, 1244-45 (10th Cir. 2002) (approving of 8% prejudgment interest); *DeGrado v. Jefferson Pilot Financial Ins. Co.*, No. 02-cv-01533-WYD-BNB, 2009 U.S. Dist. LEXIS 42034, at *5-7 (D. Colo. May 1, 2009) (same), *with Serricchio v. Wachovia Sec., LLC*, 606 F. Supp. 2d 256, 267 (D. Conn. 2009) (applying 28 U.S.C. § 1961(a)).

31

significant risks on a range of issues related to liability, timeliness, and damages.  While

Plaintiff's counsel would be prepared to litigate this case expeditiously, it is likely that several

years would pass before Class Members would see a judgment or a recovery if they were to

prevail.  By contrast, the  Settlement will provide Class Members with supplemental pension

contributions soon and allow those contributions to accumulate earnings with the rest of their

individual pension accounts.

      **D.**      **Class Counsel Believes the Settlement Is Fair and Reasonable**

Where, as here, the Parties are "represented by counsel with considerable experience in

employment law and complex litigation, including class actions," counsel's opinion about the

fairness of the settlement is "entitled to considerable weight." *Vaszlavik v. Storage Tech. Corp.*,

No. 95-B-2525, 2000 U.S. Dist. LEXIS 21129, at *7 (D. Colo. Mar. 10, 2000); *Lucas*, 234

F.R.D. at 695 (quoting *Marcus v. Kansas Dep't. of Revenue*, 209 F. Supp. 2d 1179, 1183 (D.

Kan. 2002)).  United has agreed to pay at least $6.15 million, an amount Class Counsel estimates

constitutes at least 100% of the actual damages with a significant amount of annual interest.

PRF Decl. ¶ 16.  Based on the risks the Class would face if the case were to be fully litigated,

including the risk of receiving nothing, Class Counsel believe a recovery exceeding 100% of lost

pension contributions for all Claims is outstanding and fair to the class as a whole. Agmt. § III.E.

Class Counsel negotiated and obtained a process as part of the Settlement whereby

individual Class Members will be able to challenge United's data that was used by Plaintiff's

expert to estimate the potential damages of the Claims.  Agmt. § VIII.C.3.  Thus, the Settlement

has a built-in process to ensure fairness to all Class Members in their individual allocations.  In

addition, Class Counsel may "blow up" the settlement if United's data is materially wrong. *See*

*id*. § VIII.C.3.d.  The Settlement includes protections for Class Members who are engaged in military leave at the time notice is mailed by allowing them to exercise their rights under the Settlement *after* final approval and by providing additional funding if they successfully challenge United's data.  *Id*. § VIII.D.  Thus, the Settlement offers these Class Members a fair process.

Finally, United has agreed to a range of non-monetary prospective changes, including reforming how it calculates pension contributions for pilots who return from long term military leave and making key changes to how it communicates with pilots about pension contributions that they are entitled to receive for periods of military leave.  *Id*. § X.A-D.  These changes will substantially benefit most Class Members who still work at United and also will help hundreds or thousands of other United pilots who take leave in the future (including non-Class Members).

In sum, the Settlement provides a substantial monetary recovery, a fair process for Class Members to exercise their rights, and is not only a fair but an outstanding result for the Class.

## V.   THE COURT SHOULD APPROVE THE PROPOSED NOTICE AND THE PROPOSED PROCESS FOR CHALLENGING UNITED'S DATA

Under Rule 23(e)(1)(B), a Court that approves a class settlement "'must direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise." *Childs*, 2011 U.S. Dist. LEXIS 138818, at *38 (quoting *DeJulius v. New England Health Care Emps. Pension Fund*, 429 F.3d 935, 943 (10th Cir. 2005)).  When providing such notice, the Court "must direct to class members the 'best notice practicable under the circumstances including individual notice to all members who can be identified through reasonable effort.'" *Id.* (quoting *In re Integra Realty Res., Inc.*, 262 F.3d 1089, 1110 (10th Cir. 2001)).  Rule 23(c)(2)(B) describes the content of the notice Rule 23 requires.

33

Each known Class Member will receive a Notice and a personalized worksheet for each of his or her Claims that describes the specific personnel data used to calculate the Potential Estimated Damages for each Claim.  *See* Agmt. §§ V.A, VIII.C.3.a.  The proposed Notice describes all of the types of information required by Rule 23(c)(2)(B).[13]  The proposed Notice designed for a Rule 23(b)(3) class additionally informs Class Members of how and when they may exclude themselves from the Class.[14]  Both forms of Notice describe the monetary and non-monetary relief to be provided under the Settlement, including a detailed description of the methodology the Parties applied to calculate the Potential Estimated Damages of each Claim and a summary of the Plan of Allocation proposed by Plaintiff for distributing the $6.15 million Settlement Fund.  Both forms of Notice also describe how Class Members can challenge United's personnel data that was used by Plaintiff's expert to calculate the Estimated Potential Damages of each Claim or identify a Claim that the Parties did not identify.  And both types of Notice inform Class Members that Class Counsel will seek to be paid attorneys' fees and costs as a percentage of the $6.15 million Settlement Fund and that Class Counsel will not request more than 25% of the $6.15 million Fund for attorneys' fees and the award for the class representative.

---

[13] The notice describes: (1) The nature of the action; (2) the definition of the class and why this is a class action; (3) the claims and defenses at issue in the litigation; (4) that a Class Member may enter an appearance though his or her own attorney; (5) the terms of the Settlement Agreement and how a Class Member may object to it; (6) the scope of the release; and (7) the binding effect of a class action judgment on Class Members under Rule 23(c)(3).  PRF Decl. Ex. F & G.

[14] While the Parties believe that the Court should certify a mandatory class under Rule 23(b)(1) or 23(b)(2) to ensure a uniform resolution for all Class Members equally subject to the policies and plan at issue, Plaintiff's counsel has prepared two different versions of the proposed Notice to mail to Class Members and disseminate publicly.  *See* PRF Decl. Ex. F (Notice for Mandatory Class); *id.* Ex. G (Notice for Opt-Out Class).  The first describes Class Members' rights if the Court certifies a mandatory Class under Rule 23(b)(1) or (2); the second describes the rights of Class Members if the Court certifies a  Rule 23(b)(3) opt-out class.

The Parties propose that the Settlement Administrator will directly provide the Notice and personalized worksheet(s) to all known Class Members through: (1) electronic notice via e-mail to all Class Members for whom electronic information is available, and (2) notice by First Class Mail.  *See* Agmt. § V.B.   In addition, United's Chief Pilot will e-mail a copy of the notice to all Legacy United pilots and Class Counsel will request that the Air Line Pilots Association electronically disseminate the Notice to all of its members at Legacy United.  *Id.* § V.C.   The Parties further propose that publication of the Notice be provided via a web site.  *Id.* § V.D.  This type of direct notice to known Class Members and Internet publication satisfies Rule 23's notice requirements.  *Childs*, 2011 U.S. Dist. LEXIS 138818, at *38-39; *Horton v. Leading Edge Mktg.*, 04-cv-00212-PSF-CBS, 2007 U.S. Dist. LEXIS 63533, at *13-14 (D. Colo. Aug. 28, 2007).

In conjunction with approving the Notice to Class Members, the Court should approve the proposed process for Class Members to challenge United's personnel data.  *See* Agmt. Ex. D. As this process is contemplated to occur before the fairness hearing and the final approval of the Settlement Agreement, it is necessary for the Court to approve a process by which Class Members may challenge the personnel data that will impact their individual monetary relief.

Finally, the Parties have jointly proposed a schedule of events, including providing notice to the Class, allowing comments on or objections to the Settlement, and the fairness hearing. The schedule is listed above directly after the Table of Authorities.  Plaintiff submits that the proposed deadlines are appropriate and requests that the Court approve it.  Plaintiff has attached a proposed order that incorporates the events in the proposed schedule.

## VI.    CONCLUSION

For the reasons stated above, the Court should grant Plaintiff's Motion.

August 14, 2013                          Respectfully submitted,


                                          /s/ Peter Romer-Friedman
                                         R. Joseph Barton
                                         Peter Romer-Friedman
                                         COHEN, MILSTEIN, SELLERS &
                                           TOLL, PLLC
                                         1100 New York Avenue, NW,
                                         Suite 500
                                         Washington, D.C.20005
                                         Tel: (202) 408-4600
                                         Fax: (202) 408-4699
                                         promerfriedman@cohenmilstein.com

                                         Thomas G. Jarrard
                                         Law Office of Thomas G. Jarrard
                                           PLLC
                                         1020 N. Washington Street
                                         Spokane, WA99201
                                         Tel: (425) 239-7290
                                         Fax: (509) 326-2932
                                         tjarrard@att.net

                                         Matthew Z. Crotty
                                         CROTTY & SON, PLLC
                                         WSBA #39284, ISB #8653
                                         Crotty & Son, PLLC
                                         421 W. Riverside Ave. Ste 1005
                                         Spokane, WA 99201
                                         Tel: (509) 850-7011
                                         matt@crottyandson.com

                                         Robert W. Mitchell
                                         Attorney at Law, PLLC
                                         901 N. Monroe, Suite 356
                                         Spokane, WA99201
                                         Tel: (509) 327-2224
                                         Fax: (509) 327-3374


                                         *Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing was filed with this Court on August 14, 2013 through the CM/ECF system and will be sent electronically to all registered participants as identified on the Notice of Electronic Filing.

__ /s/ Peter Romer-Friedman_____
R. Joseph Barton
Peter Romer-Friedman
COHEN, MILSTEIN, SELLERS &
 TOLL, PLLC
1100 New York Avenue, NW, Suite 500
Washington, D.C.20005
Tel: (202) 408-4600
Fax: (202) 408-4699
promerfriedman@cohenmilstein.com

*Attorneys for Plaintiff*

37